Case number 20-3569, Western Arkansas, United States v. Paul Petersen. Mr. Altman? May it please the Court, good morning. My name is Kurt Altman, I represent Appellate Paul Petersen in this matter. I would like to reserve two minutes for rebuttal also. The District Court seriously undermined the sentencing uniformity and erred when it sentenced Mr. Petersen to the extraordinary time of 74 months along with a $100,000 fine. Not only was it unreasonable because of the length and gravity of the sentence compared to others similarly situated and convicted of conspiracy to smuggle illegal aliens, but it created an unwarranted sentencing disparity that Title 18-3553 looks to avoid. It did that, the District Court did that in the manner in which it reached its sentence. The District Court relied heavily on what they, he found to be aggravating factors, Mr. Petersen. In fact, he painstakingly laid out for over an hour during the sentencing hearing what the Court believed to be aggravating. And the major aggravators in the case were the fact that Mr. Petersen was a lawyer and that Mr. Petersen was a leader of adoption scheme, as the Court put it, that lasted for a number of years. The Court accepted that guideline sentence and then used the very same factors to aggravate his sentence to almost twice what the guidelines indicated. In the transcript about page 135, the District Court says that he does not, he did not believe that the guidelines adequately reflected the seriousness of the offense. And then, as I said, went on in an attempt to more adequately reflect the seriousness, used the guideline factors, the fact that he was a leader, the fact that he was a lawyer, and the fact that this was a criminal livelihood in his view, all three of which. We have a line of cases that say that you can actually do that for an upward variance, whether it's like Thorn or United States versus David, right? So the judge can do that. And I think that there's the question then becomes you need to adequately explain why you're doing it and that has to support the extent of the variance. And I think that's really where we're at here. And so I think I really like to know is why you think that given what he said, why is it so far removed? Why is it so excessive that it essentially double scores and is beyond the pale? Well, thank you, Judge. Interestingly, Thorn does say that you can use factors for an upward variance. However, Thorn focuses on factors and so does David that relate to the criminal history category. In both those cases, the criminal history was significantly underrepresented because I think Mr. these guideline factors and find that they're aggravating because the guidelines don't really adequately reflect that it's different in Mr. Peterson's case. Mr. Peterson's case. There's no dispute. I don't think that he was a criminal history one in his category. And what the court did was take those offense level calculations that caused an upward upward movement of the ultimate offense level and use those as aggravators. And as you said, your honor, didn't adequately explain why those factors were so significant to raise the sentence in such a manner. You have to look at disparity as well, although this court can't determine what the exact sentence for Mr. Peterson should have been. This court can look at other similarly situated folks under 18, 35, 53. And when you look at those sentences, even some of the sentence sentences that the district court looked at during the sentencing hearing, you see that there's a significant disparity between what most actually I would dare say all people convicted under the statute received and what Mr. Peterson ultimately received. So there wasn't adequate explanation. What do we do with the district courts? I think a statement basically saying this case just isn't like any other one that I've seen. It's sort of a class of its own. Then does it is it still comparable or can you still compare it to the other ones that you've listed? Well, you can, your honor, because you have to. It certainly is unique, but each case in and of itself is unique. And I think the answer to that is we turn our attention back towards to the guidelines and what guideline section is used to determine the reasonable sentence. And it was the same guideline section that was used in all the other cases. So at some level, they have to be compared because they're being measured under the United States Sentencing Commission's desire to say this conduct is sentenced and starts at this level in the guidelines. And we go from there. So there has to be a comparison, even though it wasn't your traditional smuggling case where somebody was in the back of a van and being driven across the border. It was still a smuggling case. We're still convicted of smuggling. And you have to, in order to ensure that uniformity, you have to focus on those guidelines. I would move, if there is no other questions on that, I would also move to the fine. The fine was also excessive and outside the guidelines and a fine that was based on facts that simply were not in the record. Actually, facts that simply did not exist. The court accepted the pre-sentence report's rendition of the facts, made them part of the record, and then decided to reject those facts and make an argument to himself, I believe, that Mr. I was questioned as his trial counsel about that, clarified the record. The court believed that there was a reunification, which there was not. And because of that, ordered a fine of $100,000 to Mr. Peterson's financial assets going forward. Therefore, I'm going to fine him $100,000. Simply not the case. Simply not part of the record. The district court said he believed there was a reasonable inference. Well, it can't be a reasonable inference just because you say it is. It has to be based on the facts that are in the record. And that simply was not. As I read the district court, it also relied sort of almost in the alternative on what what it believed to be Mr. Peterson's wage earning ability on once he got out of prison. Do you think that that standing alone could support the fine? Well, it can't, Your Honor, because when the district court weighed those factors, ultimately came up with a payment plan for Mr. Peterson saying, hey, you were a lawyer, you were a former politician. When you get out of prison, which will be 11 years from now, approximately, you can pay $3,000 a month or 15% of your monthly income, whichever is higher. So if you do the math, which I'm not great at, that's why I'm a lawyer. But that means the course expectation 12 years from now, a disbarred lawyer, somebody that can't run for office, somebody that has no other skills is going to get out of prison and make $20,000 a month in order to make the minimum payments on his fine. That's unreasonable and an unreasonable weighing of those factors. I see that. Mr. Alvin, this is Judge Grouse. I don't think you can see me because my video has stopped and I cannot see you either. But I did a question related to the fine. It seems to me there may be just a little bit of confusion in the case law about what the appropriate standard of review is, whether it's clear error, plain error or abuse of discretion. Do you have any position on that? Your Honor, I believe it is clear error. Thank you. I'll reserve the rest of my time unless there's any other questions. I thank you for listening. Mr. Stone. Thank you, Your Honor, and may it please the court. Lloyd Stone on behalf of the United States. If I may begin by addressing two points related to Mr. Peterson's argument with respect to the term of imprisonment. First, regarding the double counting argument, as we cited in our brief, the thorn case that this court has just referenced, this court has repeatedly held that district courts are permitted to consider factors that went into the guideline calculation when considering the factors under 3553A. And the district court here did that. And the record shows that the district court went above and beyond this explanation. It pointed out that even just on a single occasion, for example, of abuse of trust would qualify Mr. Peterson for that particular enhancement. Here, in this case, Mr. Peterson abused his position of trust repeatedly over a number of years and in multiple courts in three different states. Mr. Peterson also suggests related to the double counting that perhaps it only applies to instances the defendant's criminal history is underrepresented. But in our brief, we cited the Herman case, albeit unpublished, but it was decided this year. And in that case, the panel made short work of the defendant's argument that factors related to premeditation for his murder conviction could not be used subsequently in the 3553A considerations. The court easily dispatched that. And obviously, that is a case in which the fact that it wasn't criminal history gave this court no pause. So I think the district court here committed no error in that respect. With regard to the sentencing disparity, I think it was touched on earlier that, well, I don't know if the case law was touched on earlier, but we cited the case law in our brief, the McElderry case, the Keyes case, that make it clear that this court does not undertake that kind of review because in this court's words, there's no principal basis for it. And in fact, according to the Keyes case, the district court was not required to do so. But the fact that it did here shows that the district court took that factor seriously. It gave it the weight it thought was appropriate. And in fact, you may recall that the court said in respect to that factor that the sentencing factor actually tempered its findings and kept the court from going to a higher sentence that it thought Mr. Peterson may have deserved. And in fact, it says that that's one reason it kept. The court said it decided not to go to the statutory maximum. Related to that is the fact that obviously it's the totality of circumstances related to a particular defendant that's at issue. And in this case, the district court found rightly that Mr. Peterson's, the heart of his conduct was not simply violation of the immigration statute, but instead the heart of his conduct was the purchase and sale of infants. And not only that, it was across three states involving the exploitation of different women, some of whom slept on the floors in houses that he owned in order to lie in wait to give birth. It involved fraud on multiple adoption courts that corrupted the adoption process itself in three different states. And for all those reasons, the fact that he coached these women how to lie to the courts to commit the immigration violations, all those factors took this case well beyond and made it unique, a unique case involving smuggling. And I think this case law we signed our brief is very is very clear on that point, that even though the district court didn't have to do that, the fact that it did means that Mr. Peterson's argument on appeal is simply that he disagrees with the amount of weight the court gave to that factor, which appears to be substantial weight. But that is a nonstarter as far as reversing the district court's judgment. With respect to the fine, obviously, the court must consider various statutory factors and a guideline factor that are involved, and obviously those factors overlap. But the key point here, I believe, is that this court's precedent requires the court to consider the relevant factors. And certainly one of the relevant factors the court considered and made a point of discussing was the fact that Mr. Peterson amassed substantial wealth over a period of years from his criminal livelihood. And that is certainly one of the factors for the court's consideration with respect to a fine. When we talk about these factors, I'd like to visit Judge Gross's question because our case law is pretty much about as clear as mud on that particular thing. But as I read those cases, I kind of figured that what they were trying to say, albeit not as plainly as they might have, was that you consider the findings of fact made to support the imposition of a fine applying the clear error standard. But the actual final amount of the fine and the imposition of the fine is, in fact, an abuse of discretion review. Am I wrong on that? Well, Your Honor, when helping to draft the brief, we discussed that and came to the conclusion that I guess we would operate under the higher standard, perhaps mistakenly, of clear error for the overall imposition and amount of fine. And I believe it's our position, obviously, that the court, even under the higher standard, committed no error because it considered the relevant factors. And as I believe Judge Kelly asked earlier about Mr. Peterson's earning capacity, in every case, any defendant who's convicted of crime and goes to prison will face difficulties. But that is not a per se bar on the court's determination. In fact, I don't know that we cite a certificate on this, but it's obvious that the determination of payment of a fine for someone going to prison obviously involves some amount of projection on the court's part. And here, Mr. Peterson had a demonstrated record of hard work and skills. His education obviously involved an undergraduate degree, even though he's losing his law degree or his law licenses. And moreover, I would point out in the Allman case that we cited in our brief, and I would like to candidly state we didn't give a lot of explanation to this. But in that case, this court recognized that the nature of the defendant's crime, in that case, he was a leader of a large organization that distributed over 150 grams of cocaine. That's a factor. And here, and I'm not saying this flippantly, but Mr. Peterson was able to work as an elected official, a public official. As he said, he managed an office with a multimillion dollar budget, over 100 employees, while running a criminal enterprise that spanned three states and multiple people in lower positions of authority. So that's obviously a factor the court considered and made findings on that. I do think that Mr. Peterson's point about the financial resources is probably the key issue on appeal. And what I would ask the court to consider in that regard, Mr. Peterson suggests that the court made up its statements out of whole cloth. But if this court, you know, to put oneself in the position of the district court, coming into the sentencing hearing, Mr. Peterson represented that he had been divorced. In the PSR, I believe it's paragraph 114, Mr. Peterson said that one of the reasons he and his wife divorced was because the state of Arizona had seized all of their financial assets. The court also had before it a pleading file with Mr. Peterson shortly after his change of plea and after he had been divorced, in which Mr. Peterson asked the court if he could travel with his ex-wife for a period of 10 days to Idaho. Then the court had before it as well the fact that the PSR itself said that it appears that Mr. Peterson, based on the obvious fact that these assets were transfers to his wife during the divorce, it appears that those assets cannot be used to liquidate to be liquidated to pay a fine. But in the same sentence, the probation officer raised the prospect that those assets could be available to the government's financial litigation unit. In other words, creating the inference that there was some suspicion surrounding the transfer of those assets. And then ultimately, the court learns during the sentencing hearing that Mr. Peterson and his wife have in fact been living together for up to three months prior to the sentencing hearing. When one takes all of those facts into consideration, the court's comments with respect to whether or not the transfer of those assets was a ruse to shield those assets from creditors is well taken. And I believe any district court in this country when faced with that set of facts would ask those same questions. Key point is, ultimately, the district court decided that it would not hold that against Mr. Peterson and it would not make that finding. But as your honor pointed out earlier, the court instead made the alternative finding that it would allow Mr. Peterson to, if it turns out he did not have access to those assets, that he could pay it out to find out over time. And that's one of the reasons the district court should be affirmed. I see that I've run out of time, and unless there are no further questions, we would ask this court affirm the district court's judgment in all respects. Thank you, Mr. Stone. Mr. Altman, you have a bit of rebuttal? Thank you, your honor. As far as the fine and the facts that were just reiterated, put yourself in Mr. Peterson's position. Yeah, he was back living at the house because he was on his way to federal prison, couldn't sign a 12-month lease. His wife now had to work because the income that they had had been dissipated and taken, and his four kids were home trying to go to school during COVID. So, yeah, he was living at the house because they're still his kids and it was still his family. That has nothing to show any kind of unification. And what the court ignored, saying that the divorce gave all the assets to his wife, was that wasn't the case. The divorce split the assets. It just so happens that approximately $700,000 of those assets went to the state of Arizona through forfeiture from Mr. Peterson, from his portion of the assets. And then I will just briefly, I see I'm out of time, say that, yes, the court can do that comparison on disparity, just like the district court did. But once that's done, it has to be done, and those factors have to be weighed correctly. Otherwise, or with great care, as Thorne indicates, otherwise you risk the disparity that 1353 hopes to avoid. And that's exactly what happened here, your honor. I thank you for your time. I'd ask that the court vacate the sentence and remand it for resentencing. Thank you to both counsel for your arguments, and we will take the matter under advice.